WBZ-TV4 *vs.* District Attorney for the Suffolk
District
(and a companion case).

Suffolk. September 7, 1990. - November 19, 1990.

Present: Liacos, C.J., Nolan, Lynch, & Greaney, JJ.

*Supreme Judicial Court*, Superintendence of inferior courts. *Practice, Criminal*, Grand jury proceedings. *Grand Jury. Privacy. Public Record.*

Although consideration of certain appeals would ordinarily be precluded by the rule against full court review of an interlocutory ruling denying relief, the interest of efficient administration of justice called for the exercise of this court's power under G. L. c. 211, § 3, to consider issues raised concerning the ruling of a single justice. [598-599]

A television station's request for injunctive relief permitting access to the videotape recording of a certain lineup requested by a grand jury was correctly denied by a single justice of this court on the ground that, in the circumstances of an ongoing criminal investigation, "at this time the secrecy of the grand jury and the privacy of [the individual identified at the lineup] should be protected by not requiring the disclosure of the record (the videotape) of the line-up delivered to the grand jury." [599-602]

A television station's request for injunctive relief permitting access to a tape-recorded statement of a witness in a grand jury investigation was correctly denied by a single justice of this court where, although the recording was conceded to be a public record, the district attorney adequately showed that the recording was exempt from disclosure under G. L. c. 4, § 7, Twenty-sixth (*f*), since disclosure, because of possible adverse effect on law enforcement, would not be in the public interest. [602-604]

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on January 16, 1990.

The case was heard by *Wilkins*, J.

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on March 7, 1990.

The case was heard by *O'Connor*, J.

*George J. Skelly* (*Philip Y. Brown* with him) for the plaintiff.

*Marina Khazanov,* Assistant District Attorney (*David B. Mark*, Assistant District Attorney, with her) for the District Attorney for the Suffolk District.

GREANEY, J. In these consolidated appeals, WBZ-TV4 (WBZ) challenges orders of two single justices of this court denying WBZ access to materials in the so-called Carol Stuart murder case. The materials in question involve: (a) the videotape of a lineup at which Charles Stuart identified William Bennett as the man who had shot Stuart and his wife, Carol Stuart; and (b) a tape-recorded statement of a witness in the investigation.

Carol Stuart was murdered, and her husband, Charles Stuart, wounded, as they were driving home from a childbirth class at a Boston hospital on October 23, 1989. Charles Stuart initially told the police that the Stuarts had been shot by a black male. Bennett, a black male, became the prime suspect. The police obtained information from witnesses who, allegedly, implicated Bennett. It is asserted that this information included a tape-recorded statement of a witness. The police used the information to obtain warrants to search Bennett's residence and the residences of Bennett's friends and relatives. Three witnesses have indicated that the information they provided the police is false, and that they were pressured by the police into giving their information.

A grand jury were convened to investigate the crimes. The grand jury requested that a lineup be held. On December 28, 1989, Bennett appeared in a lineup at which he was supposedly identified by Charles Stuart as the assailant. This procedure was videotaped.

Charles Stuart subsequently was found dead, apparently the result of suicide. Shortly thereafter, the district attorney's office announced that Bennett was no longer a suspect.

The grand jury, however, are still actively investigating the case.

We now describe the procedural background of the two appeals. WBZ requested under the public records law, G. L. c. 66, § 10 (1988 ed.), that the district attorney provide it with "a copy of any and all materials, including but not limited to, affidavits, statements to police, police reports, police notebook entries, and line-up orders, relating to William Bennett being placed in a line-up in connection with the investigation of the shooting of Carol Stuart." The district attorney denied the request. WBZ filed in Superior Court a motion to gain access to the materials. A Superior Court judge allowed access to various search warrants, supporting affidavits, and returns. The judge denied access to the videotape of the lineup on the ground of secrecy of grand jury proceedings.

WBZ petitioned a single justice of the Appeals Court, pursuant to G. L. c. 231, § 118, first par. (1988 ed.), for relief from the denial of access to the videotape. That single justice denied the petition.[1] WBZ thereafter filed in the Supreme Judicial Court for Suffolk County, pursuant to G. L. c. 249, § 5 (1988 ed.), a complaint for relief in the nature of mandamus and a "motion for mandatory injunction," seeking to compel the district attorney to provide the videotape and the tape recording of the witness statement. A single justice of this court denied the injunction as to the videotape, and, as to the tape recording, ordered the case transferred to Superior Court for a determination whether it was exempt from disclosure under G. L. c. 4, § 7, Twenty-sixth (*f*) (1988 ed.) ("investigatory materials . . . the disclosure of which . . . would probably so prejudice the possibility of effective law enforcement that such disclosure would not be in the public

---

[1]The Appeals Court single justice who acted on WBZ's petition under G. L. c. 231, § 118, first par., noted that the matter might not be properly before her but decided nevertheless to deal with the merits of WBZ's claim.

interest").[2] WBZ appeals from the single justice's denial of the injunction seeking access to the videotape.

On transfer, a judge in the Superior Court accepted and read in camera a memorandum submitted by the district attorney detailing reasons why disclosure of the witness statement would compromise the ongoing grand jury investigation. (The contents of the memorandum were not disclosed to WBZ.) The judge ruled that, for the reasons stated in the district attorney's memorandum, the tape recording[3] was exempt from disclosure "at this time." WBZ petitioned a single justice of the Appeals Court for relief from this order pursuant to G.L. c. 231, § 118, first par. The single justice read in camera the district attorney's memorandum and, for the reasons stated therein, denied relief.

WBZ then filed in the Supreme Judicial Court for Suffolk County a complaint under G. L. c. 211, § 3 (1988 ed.), seeking relief from the denial of access to the tape recording. A single justice of this court read in camera the district attorney's memorandum and, for the reasons stated therein, denied relief. WBZ appeals the denial of relief under G. L. c. 211, § 3.

1. *Access to the videotape of the lineup.* The Commonwealth points out that there is a threshold procedural problem with WBZ's appeal from the single justice's order concerning access to the videotape. For the reasons spelled out in the margin, the Commonwealth is correct in its contention.[4]

---

[2]Regarding the videotape of the lineup, the single justice noted that the complaint for mandamus was not ripe for decision on the merits. He stated the following: "The facts are not established on the record. The matter, therefore, is properly before this court pursuant to [Mass. R. Civ. P. 65, 365 Mass. 832 (1974)] for decision only on the question of the issuance of a preliminary injunction."

[3]The district attorney took the position before the judge in the Superior Court that there was only one tape-recorded statement, and the judge ruled on that basis after in camera examination of the one audiotape transcript provided to him.

[4]The order in question was of a single justice, sitting in effect as a trial judge, considering WBZ's request for preliminary equitable relief in the form of an injunction in connection with an original complaint filed in the Supreme Judicial Court for Suffolk County. The requested relief was de-

However, the matter involves a case which has generated considerable public interest and concerns a claim of right of access by the media to material that WBZ argues is being improperly held from the public. The question of WBZ's entitlement to the videotape and the question of its entitlement to the tape-recorded statement are facets of the single claim of right of access. Moreover, the two questions have been consolidated for purposes of this appeal. In these circumstances we believe that the interest of efficient administration of justice calls for the exercise of our power under G. L. c. 211, § 3, to consider the issues raised concerning the ruling of the single justice. See *Campana v. Directors of the Mass. Hous. Fin. Agency*, 399 Mass. 492, 499 n.16 (1987).

The single justice denied access to the videotape essentially for the reasons stated in the memorandum of decision of the Superior Court judge who decided WBZ's motion. Those reasons were grounded on the requirement of secrecy of the grand jury and a conclusion that WBZ had not demonstrated a constitutionally based interest compelling enough to override that requirement. We inquire only whether the single justice had abused his discretion or committed a clear error of law. See *Luna v. Superior Court*, 407 Mass. 747, 749-750 (1990). We find neither an abuse of discretion nor an error of law.

The requirement that grand jury proceedings remain secret is deeply rooted in the common law of the Commonwealth. See *Commonwealth v. Harris*, 231 Mass. 584, 586 (1919); *Commonwealth v. Mead*, 12 Gray 167, 170 (1858); *Commonwealth v. Hill*, 11 Cush. 137, 140 (1853). "The grand jury as known to the common law always has been

nied. In so doing, the single justice noted that facts might have to be established with respect to the mandamus aspect of the case, and that he was proceeding only on WBZ's application for a preliminary injunction. See note 3, *supra*. The matter was not reported by the single justice and is not subject to the provisions of G. L. c. 231, § 118. For the reasons stated in *Kargman v. Superior Court*, 371 Mass. 324, 329-330 (1976), the rule against full court review of an interlocutory ruling which denied relief ordinarily would preclude consideration of these appeals.

regarded as a bulwark of individual liberty and a fundamental protection against despotism and persecution. The rule of secrecy of its hearings and deliberations has come down from early times." *Lebowitch, petitioner,* 235 Mass. 357, 361 (1920). See Mass. R. Crim. P. 5 (d), 378 Mass. 851 (1979).

Grand jury secrecy is designed to protect the grand jury from extraneous influences that have the potential to distort the investigatory or accusatory functions of the grand jury. See *Opinion of the Justices,* 373 Mass. 915, 918 (1977). Such extraneous influences include the news media: "Of course, members of the press are not in attendance." *Id.* at 919. The requirement of grand jury secrecy also is designed to protect individuals from notoriety and disgrace, unless probable cause is found to indict them, *Commonwealth* v. *Pezzano,* 387 Mass. 69, 73 (1982); *Commonwealth* v. *Harris, supra; Jones* v. *Robbins,* 8 Gray 329, 344 (1857); to protect witnesses from intimidation and subornation, *Opinion of the Justices, supra* at 918-919; see *In re Grand Jury Proceedings,* 851 F.2d 860, 864 (6th Cir. 1988); *United States* v. *Phillips,* 843 F.2d 438, 441 (11th Cir. 1988); *Senate of P.R.* v. *United States Dep't of Justice,* 823 F.2d 574, 588 (D.C. Cir. 1987); to encourage full and free disclosure of information concerning the commission of a crime; and to allow the utmost freedom of deliberation to the grand jury. *Douglas Oil Co.* v. *Petrol Stops Northwest,* 441 U.S. 211, 219 n.10 (1979).

The lineup in this case was requested by the grand jury. WBZ principally argued before the single justice that the extensive press coverage of the investigation of Bennett has so diminished his privacy interest that disclosure of the lineup videotape will not compromise Bennett's privacy any further. In dealing with this contention the single justice recognized that "[WBZ's] argument does not, of course, face the point of preserving the grand jury's secrecy. The material sought in this action is unlike written affidavits. Cf. *Newspapers of New England, Inc.* v. *Clerk-Magistrate of the Ware Div. of the Dist. Ct.,* 403 Mass. 628 (1988). The image of a police lineup, broadcast over television and reprinted in newspapers

and elsewhere, would have an incalculably greater effect on a person's privacy interest than dissemination of the written word. Bennett has not been indicted, and the course of the grand jury investigation should not be subject to intrusion in the way sought, at least at this time." We agree with this conclusion. The fact that certain aspects of the investigation of Bennett's alleged involvement with the Stuart case have received wide press coverage does not diminish Bennett's right as an unindicted individual to be free from the additional "notoriety and disgrace" that could attend publication (in dramatic videotape format) of other details of the grand jury's investigation. Further, as we shall discuss at more length in a moment, the videotape is a matter of evidence which properly deserves protection in order to preserve the secrecy of the grand jury.

WBZ also maintains that disclosure of the videotape is appropriate because it does not involve "a matter occurring before the grand jury," and because the videotape "exists independently of the grand jury and has its own intrinsic value." We agree that not every document placed before a grand jury is automatically exempt from disclosure.[5] The general rule, however, is "that confidential documentary information not otherwise public obtained by the grand jury by coercive means is presumed to be 'matters occurring before the grand jury.' " *In re Grand Jury Proceedings, supra* at 866. The videotape in this case did not exist until after the grand jury convened, but was created at their request, was viewed exclusively by them, and is still being considered by

---

[5]In this regard, WBZ cites *United States* v. *Phillips,* 843 F.2d 438, 441 (11th Cir. 1988); *United States ex rel. Woodard* v. *Tynan,* 757 F.2d 1085, 1087, modified on rehearing, 776 F.2d 250 (10th Cir. 1985); *Matter of Special March 1981 Grand Jury,* 753 F.2d 575, 578 (7th Cir. 1985); *Petitions for Disclosure of Documents Subpoenaed by the Grand Jury,* 617 F. Supp. 630, 631-632 (S.D. Fla. 1985); *In re Doe Grand Jury Proceedings,* 537 F. Supp. 1038, 1042-1043 (D.R.I. 1982); *In re Grand Jury Proceedings,* 505 F. Supp. 978, 981-983 (D. Me. 1981); *Capitol Indem. Corp.* v. *First Minn. Constr. Co.,* 405 F. Supp. 929, 931 (D. Mass. 1975). None of these cases involves the precise question that we face here, and none resembles this case on its facts.

them. As such, the videotape has the characteristics of material especially prepared for the grand jury which, when received by them, should ordinarily be protected by the rule of grand jury secrecy. We perceive nothing in *In re Melvin*, 550 F.2d 674, 677 (1st Cir. 1977), to contradict the conclusion that the videotape of a lineup (as distinguished from the actual lineup itself) can be considered incorporated into the grand jury proceedings for purposes of secrecy.

Therefore, we reject WBZ's arguments about the videotape's intrinsic independent value and its status as a matter outside the grand jury and agree with the single justice that "at this time the secrecy of the grand jury and the privacy of Bennett should be protected by not requiring the disclosure of the record (the videotape) of the line-up delivered to the grand jury."

2. *Access to the tape-recorded witness statement.*[6] This question is before us on WBZ's appeal of an order of the single justice entered in connection with a petition for relief filed pursuant to G. L. c. 211, § 3. In the memorandum accompanying the order, the single justice indicated that he had read the district attorney's confidential memorandum detailing reasons why disclosure of the tape-recorded witness statement would compromise the ongoing grand jury investigation and agreed with the Superior Court judge that the recording was exempt from disclosure. Again, we consider

---

[6]The parties seem to agree that there is only one tape-recorded witness statement, but seem to disagree over whether there are two other statements in other than tape-recorded form. WBZ's original public records law request was for "any and all materials, including but not limited to . . . statements to police . . . in connection with . . . the shooting of Carol Stuart." Also, at various stages of this litigation, WBZ has clarified that it desired three particular witness statements, whether recorded on audiotape or in some other form. The district attorney, on the other hand, maintains that there is only one tape-recorded statement, but apparently does not deny that the other two requested statements may exist in another form. Because of our decision on this point, we need not reconcile these positions. However, if and when WBZ is allowed access to the one tape-recorded statement that the district attorney admits exists, it also will be entitled to the other statements and materials it has requested (in whatever form) that are not otherwise inaccessible.

only whether the single justice has abused his discretion or committed a clear error of law. See *Luna* v. *Superior Court, supra* at 749-750. Neither factor is present here.

The district attorney agreed with WBZ that the witness tape is a public record but successfully maintained that it is exempt from disclosure under G. L. c. 4, § 7, Twenty-sixth (*f*), which protects "investigatory materials necessarily compiled out of the public view by law enforcement or other investigatory officials the disclosure of which materials would probably so prejudice the possibility of effective law enforcement that such disclosure would not be in the public interest." WBZ correctly points out that this statute does not provide a blanket exemption for investigatory materials assembled by police departments, see *Reinstein* v. *Police Comm'r of Boston*, 378 Mass. 281, 289 (1979); *Bougas* v. *Chief of Police of Lexington*, 371 Mass. 59, 65-66 (1976); that the district attorney has the burden of showing the existence of an exemption, *id.* at 61; and that there is a presumption favoring disclosure. G. L. c. 66, § 10 (*c*).

Despite this general presumption, the decision whether an exemption to disclosure applies requires careful case-by-case consideration. *Reinstein* v. *Police Comm'r of Boston, supra* at 290. That decision turns on whether, because of its possible effect on effective law enforcement, such a disclosure would not be in the public interest. The relevant public policy concerns include "the prevention of the disclosure of confidential investigative techniques, procedures, or sources of information, [and] the encouragement of individual citizens to come forward and speak freely with police concerning matters under investigation." *Bougas* v. *Chief of Police of Lexington, supra* at 62. We agree with the single justice that the district attorney has offered an adequate justification for nondisclosure which relates, in a specific manner, to the tape-recorded witness statement sought by WBZ and the ongoing secret inquiry of the grand jury, and which establishes that disclosure of the statement could well have an adverse effect on effective law enforcement. In reaching this determination, we recognize that WBZ is hampered in its quest by the lack

of access to the district attorney's confidential memorandum that we, and all the other judges involved in the matter, have examined. Not only have we carefully considered the arguments made by WBZ based on its assumptions of what reasons the district attorney has offered in the confidential memorandum, we also have weighed the justification actually offered against the policies expressed in the public records statute and conclude that the district attorney has met his burden. We emphasize again, as is the case with the videotape of the lineup, that nondisclosure is specific to the circumstances of the ongoing criminal investigation at this time and that in the future disclosure may be appropriate.

The orders of the single justices in both cases are affirmed.

*So ordered.*