Fremont-Smith, J.
The above-captioned action entails claims by plaintiff for injuries allegedly sustained while attending a concert. Plaintiff now moves for an order compelling the Keeper of Records for the Boston Police Department, Area D-14 (“BPD”), to produce for inspection and copying all relevant materials relating to the alleged incident. In particular, plaintiff seeks production of two categories of documents:
1. All reports of witness interviews conducted by Sergeant Detective Kevin Mullen or by any other officer relating to the incident at The Paradise on November 13, 1997, in which plaintiff was allegedly injured; and
2. The contemporaneous notes taken by Sergeant Detective Mullen of those interviews, which he keeps in a spiral notebook.
For the following reasons, plaintiffs motion is ALLOWED.
BACKGROUND
Plaintiff contends that on November 13, 1997, while attending a concert, she sustained injury when Defendants Lane and Bledsoe dove from the stage, landing on her. The BPD conducted a criminal investigation of this alleged incident. On December 1, 1997, Sergeant Detective Mullen testified at a public hearing before the City Licensing Board that the BPD had interviewed at least eighteen witnesses to the incident. Although Sergeant Detective Mullen gave summaries of his find *287 ings to the Commission, he did not identify the witnesses upon whom he relied in forming his conclusions. As a result of this investigation, the authorities decided not to bring criminal charges against the defendants.
On December 10, 1997, plaintiff served a deposition subpoena upon the Keeper of Records for the BPD, requiring the production of all records relating to the investigation of the incident. The BPD refused to.comply with this deposition subpoena, claiming exemption under G.L.c. 66, §10(a), ‘The Public Records Act.”
DISCUSSION
G.L.c. 66, §10(a), requires the disclosure, upon request, of any “public record” as that term is defined in G.L.c. 4, §7, cl. Twenty-sixth. Moreover, there exists a presumption that any record sought is public. G.L.c. 66, §10(c). Although certain categories of documents are exempt, G.L.c. 4, §7, cl. Twenty-sixth (a)-(m), a governmental agency which refuses to comply with a request for disclosure by a member of the public has the burden to “prove with specificity the exemption which applies.” G.L.c. 66, §10(c).
The BPD first asserts the applicability of the exemption for “investigatory materials necessarily compiled out of the public view by law enforcement or other investigatory officials the disclosure of which materials would probably so prejudice the possibility of effective law enforcement that such disclosure would not be in the public interest.” G.L.c. 4, §7, cl. twenty-sixth (f). As another Superior Court judge has recognized in a similar case, Doe v. Lyons, 6 Mass. L. Rptr. 13, 274, 278 (Feb. 24, 1997) (Garsh, J.), the burden is on the BPD to prove that the records fall within the investigatory materials exemption. The determination that documents fall within the scope of this exemption turns on “whether, because of its possible effect on effective law enforcement, such a disclosure would not be in the public interest.” WBZ-TV4 v. District Attorney for the Suffolk District, 408 Mass. 595, 603 (1990). “There is no blanket exemption provided for records kept by police departments ... solely because they are involved in investigatory work . . . and . . . the potential prejudicial effect of disclosure on effective law enforcement is to be considered on a case-by-case basis.” Globe Newspaper Co. v. Police Commissioner, 419 Mass. at 859. The policy considerations underlying the exemption for law enforcement investigatory materials include “the avoidance of premature disclosure of the Commonwealth’s case prior to trial, the prevention of the disclosure of confidential investigative techniques, procedures, or sources of information, the encouragement of individual citizens to come forward and speak freely with police concerning matters under investigation, and the creation of initiative that police officers might be completely candid in recording their observations, hypotheses and interim conclusions.” Bougas v. Chief of Police, 371 Mass. 59, 62 (1976).
As in Doe, supra, there is in this case no continuing criminal investigation, and no evidence has been presented that the materials sought to be produced would disclose confidential investigative techniques, procedures, or sources of information. Additionally, as in Doe, there is no suggestion that the files sought contain any particular names of informants that may be vital either to carrying out other police investigations or to protect a confidential informant. See Reinstein v. Police Commissioner, 378 Mass. 281, 290 (1979) (confidential sources and secret investigative procedures are the sort of material protected by the investigatory exemption).
Moreover, here, as in Doe, there has been no showing by the BPD that releasing statements made by witnesses to the BPD, along with their identities, would deter witnesses to future crimes from coming forward, or any showing that the release of statements made to a police officer, when ordered by a court after a judge’s determination that the documents sought are clearly relevant to a pending civil action commenced by the victim, would inhibit future citizen participation in criminal investigations. This is particularly true where, as here, the release is to be governed by a confidentiality order. Likewise, no reason has been demonstrated as to why the requested materials, under these circumstances, would make police officers less likely to be “completely candid in recording their observations, hypotheses and interim conclusions.” Bougas v. Chief of Police, 371 Mass. at 62.
In sum, the BPD has failed to demonstrate with specificity that to subject these materials to disclosure in this civil action would “probably so prejudice the possibility of effective law enforcement that such disclosure would not be in the public interest. . .” G.L.c. 4, §7, cl. twenty-sixth (f).
The BPD next alleges the applicability of the exemption contained in G.L.c. 4, §7, cl. twenty-sixth (c), for “medical records,” or for “materials or data relating to a specifically named individual, the disclosure of which may constitute an unwarranted invasion of personal privacy.” The only possible medical records in the materials sought, however, are those of the plaintiff, and, therefore, axe materials to which she is entitled. As for the second part of the exemption, a balancing between any claimed invasion of privacy, and the interest in disclosure, is required. Globe Newspaper Co. v. Police Commissioner, 419 Mass. 852, 858 (1995). In the context of this suit, the only persons who could conceivably claim invasion of privacy are the witnesses who gave statements. There is no evidence, however, that any witness was given any assurances of confidentiality, and this Court concurs with the reasoning in Doe, supra at 278, that individuals of normal sensibilities, who speak with the police, have no reasonable expectation that their names, and what they have said, will not be made known to parties in a civil action arising out of and relating to the events *288 about which they were interviewed — just as their statements may be made available to the parties should a criminal proceeding result.
The broad scope of discovery permitted in a civil case applies to “any matter, not privileged, which is relevant to the subject matter involved in the pending action.” Mass.R.Civ.P. 26(b)(1). Since the Court finds that the BPD has failed to carry its burden of demonstrating that the policy objectives underlying any claimed exemption to the Public Records Act are applicable, or that any other ground for nondisclosure has been established, the Court will order production by the Keeper of Records of the BPD of all the materials sought by the plaintiff in her subpoena tecum duces.
ORDER
For each of the foregoing reasons, plaintiffs motion to compel production of documents is ALLOWED, and the BPD is hereby ORDERED to produce the materials sought pursuant to plaintiffs subpoena tecum duces within ten days of receipt of this order, subject to the protective order previously issued. Sergeant Detective Mullen may, however, redact from his notebook his own personal impressions and conclusions, which comprise his personal “work product.”